Second degree burglary and grand larceny; sentence: ten years imprisonment.
On May 14, 1978, at around 10:30 or 11:00 a.m., Gerald Kelly and his wife Susan left their home in Montgomery, Alabama, to go shopping. Upon their return at around 12:15 p.m., both Mr. and Mrs. Kelly noticed a car parked in front of an adjacent unoccupied house sound its horn. After pulling into their driveway, Mr. Kelly went to open the front door and noticed his television and stereo sets had been moved into the foyer near the front door while he was gone. He told his wife to stay outside, and he then proceeded into the house. While her husband was inside, Mrs. Kelly saw the appellant carrying a cardboard box walk from around the far corner of their house toward her. (Neither could testify as to the contents of the box.) Shortly thereafter Mr. Kelly emerged from the house with his pistol and held appellant until the police arrived.
 I
Appellant contends that the State has failed to establish a prima facie case on either count of the indictment.
 A
Count I, omitting the formal parts, states:
 ". . . Zeddie Dee Mauldin, Jr., whose name is to the Grand Jury otherwise unknown, did, in the daytime, with intent to steal, break into and enter an uninhabited dwelling house, owned by or in the possession of Gerald Kelly."
Appellant argues that no evidence of a breaking or entering was introduced so as to allow the jury to reasonably infer his guilt.
Officer William Hibbert, Jr., Evidence Technician for the Montgomery Police Department, testified that he discovered marks on the front door resembling those made by a screwdriver thereby providing, as he stated, "a possible point of entry." Furthermore he found a screwdriver with a glove around the handle at the end of the Kelly's driveway in close proximity to the cardboard box appellant had been carrying. Both were introduced into evidence. In addition Officer Hibbert took various photographs of the scene, all of which were admitted into evidence. One depicted the television and stereo sets in the foyer of the Kelly's home near the front door as well as the position of the cardboard box near the Kelly's driveway.
Gerald Kelly testified that after his wife and he returned home, he opened the front door of their house wherein he found their television and stereo sets in the foyer approximately three to four feet from where they were normally situated. It was after this discovery and his subsequent search of the house that he saw appellant in the front yard with his wife.
Mrs. Kelly testified that the back door to their house had been locked the night before, and she had not opened it on the morning of May 14. She stated that after her husband had come to the front yard where she and appellant were standing, he told her to check the back door. She did and found it unlocked. Additionally Mrs. Kelly testified that "it had recently rained and no one had been outside," but when she went outside after she got home there were footprints from their back door leading around the house. However, she did not know who had made them.
Detective C.H. Brannam testified that he observed footprints in back of the Kelly home. He drew a diagram, introduced into evidence, which illustrated that the direction of the footprints corresponded to Mrs. Kelly's earlier testimony concerning the direction from which appellant had come when she first saw him.
One category of second degree burglary is the breaking and entering of an uninhabited dwelling house in the daytime with the intent to steal or to commit a felony. Section 13-2-41, Code of Ala. 1975; Livingston v. State, 44 Ala. App. 559,216 So.2d 731 (1968). The corpus delicti, a necessary element of proof in any criminal case, may be established by circumstantial *Page 791 
evidence. Wallace v. State, 52 Ala. App. 331, 333, 292 So.2d 140
(1974); Dupree v. State, 148 Ala. 620, 42 So. 1004 (1907). InCumbo v. State, Ala.Cr.App., 368 So.2d 871, 874, cert. denied, Ala., 368 So.2d 877 (1978), we stated:
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. . . ." (Citations omitted.)
It is our duty upon review to determine whether or not any theory of the evidence exists from which the jury could have excluded every hypothesis except guilty beyond a reasonable doubt. It is within the province of the jury to decide whether or not circumstantial evidence tending to connect the appellant with the crime excludes to a moral certainty every other reasonable hypothesis than that of appellant's guilt. Cumbo, supra, at 875. If facts are presented from which the jury may reasonably infer that the crime has been committed, although established by circumstantial evidence, the question must be submitted to the jury. Hopson v. State, Ala.Cr.App.,352 So.2d 500, 502, affirmed, Ala., 352 So.2d 506 (1976).
The jury had before it the facts: (1) marks, possibly made by a screwdriver, were found on the Kelly's front door, (2) a screwdriver and glove were found at the end of the Kelly driveway and close to the cardboard box which appellant had been carrying, (3) the Kelly's television and stereo sets had been moved from their usual locations and placed in the foyer, (4) the back door which was locked the night before and which had not been unlocked that morning was found unlocked, (5) footprints were found leading from the back door around the Kelly's house, (6) the footprints were in the same area from which appellant had been seen walking by Mrs. Kelly, (7) the appellant was on the Kelly's property when they discovered the unlocked back door and moved possessions, and (8) the apparent alarm from appellant's companion sounding the car horn when the Kellys drove up. Clearly, the jury was presented sufficient evidence from which to reasonably infer appellant's guilt.Young v. State, 51 Ala. App. 400, 286 So.2d 76 (1973). The trial court properly overruled appellant's motions to exclude the State's evidence and for a new trial based upon the State's failure to establish a prima facie case of second degree burglary.
 B
Count II, omitting the formal parts, states:
 ". . . Zeddie Dee Mauldin, Jr., whose name is to the Grand Jury otherwise unknown, feloniously took and carried away, one television, a better description of which is unknown to the Grand Jury, of the value of $340.00, and one AM/FM receiver, a better description of which is unknown to the Grand Jury, of the value of $350.00, all of the aggregate value of $690.00, the personal property of Gerald Kelly. . . ."
(Emphasis supplied.)
Appellant asserts that two necessary elements of larceny under § 13-3-50, Code of Ala. 1975, the taking and carrying away, were not proven.
Larceny is the felonious taking and carrying away of the personal property of another with the intent to deprive the owner thereof. By its nature, larceny is a trespass on the possession of another. Woods v. State, 57 Ala. App. 1,325 So.2d 517, cert. denied, 295 Ala. 430, 325 So.2d 519 (1975). As stated in McCall v. State, 262 Ala. 414, 416, 79 So.2d 51, 52
(1955):
 "It is well settled in this state that the corpus delicti is a fact which may be proved by circumstantial evidence. If there is a reasonable inference deducible from the evidence of its existence, the court must submit the question of the sufficiency and weight of the evidence *Page 792 
tending to support that inference to the jury. . . ." (Citations omitted.)
See also: Cumbo, supra; Jones v. State, 51 Ala. App. 570,287 So.2d 886 (1974) and cases cited therein.
To constitute larceny, there must be a severance of the possession of the owner and an actual possession by the wrongdoer. When the wrongdoer obtains at some moment complete and exclusive dominion and control of the chattel, the taking is complete. Such severance of possession by and actual possession in the wrongdoer may be but for a moment. The length of time is unimportant. Klemmer v. State, 51 Ala. App. 383,286 So.2d 58, cert. denied, 291 Ala. 786, 286 So.2d 62 (1973), cert. denied, 416 U.S. 957, 94 S.Ct. 1972, 40 L.Ed.2d 308
(1974); Cherry v. State, 43 Ala. App. 318, 189 So.2d 786 (1966);Lawson v. State, 38 Ala. App. 322, 82 So.2d 812 (1955). Furthermore it is immaterial how short the distance the chattel was moved for slight asportation will be deemed sufficient to support a conviction of larceny. Webb v. State, 55 Ala. App. 195,197, 314 So.2d 114, cert. denied, 294 Ala. 774,314 So.2d 116 (1975); Tucker v. State, 50 Ala. App. 405, 408,279 So.2d 576 (1973); Johnson v. State, 41 Ala. App. 351, 353,132 So.2d 485 (1961).
We find the evidence sufficient from which the jury might reasonably infer appellant's guilt. Consequently, the trial court properly overruled appellant's motions to exclude the State's evidence and for a new trial, both based upon failure by the State to establish a prima facie case of larceny.
 II
Although not argued in his brief, appellant in his motion for a new trial asserted that there was a fatal variance between the allegations of the indictment and the proof. Appellant centered his argument upon the fact that the indictment alleged possession of the stolen property as described in Count II in Gerald Kelly when his and Mrs. Kelly's testimony conflicted. The following testimony, in pertinent part, was elicited from Mrs. Kelly:
"Q. And what is that a picture of?
 "A. It's a picture of my t.v. and the speakers in the foyer right by the front door.
* * * * * *
 "Q. Now, you said to the jury a minute ago that your stereo and your t.v. was (sic) moved that was (sic) in the house?
"A. Hm hmm.
"Q. Is that yours? Do you own it?
"A. Yes, I do.
"Q. You do?
"A. Hm hmm.
"Q. Your husband don't (sic) own it?
"A. No.
* * * * * *
 "Q. And I believe you also testified if I remember correctly that the television set and the stereo you purchased, is that correct, they were yours?
 "A. They were purchased and paid for by me and my husband but they were gifts to me.
* * * * * *
 "Q. Mrs. Kelly, I asked you this morning about this stereo and the t.v. and did I understand you to say that that was your property?
 "A. The stereo he gave to me as a birthday gift but it was not paid for. We both paid on it but he did say he gave it to me as a gift.
"Q. And what about the t.v.?
"A. That is ours, both of ours.
 "Q. Did I misunderstand you this morning when you said that that was yours, too?
 "Q. No, you only asked about the stereo, you did not mention my t.v."
Mr. Kelly's testimony concerning possession of the stolen property, in pertinent part, is as follows:
"Q. What is that a picture of?
 "A. My front door, my t.v. and stereo speakers and a front view of the entrance to my den.
* * * * * * *Page 793 
 "Q. Now, have you bought the t.v. and the stereo set or had your wife bought it, I think she said she bought it?
"A. Ask the question again, please.
 "Q. Have you bought this t.v. set and this stereo set or had your wife bought it?
"A. We bought them together.
"Q. You bought them together?
 "A. We're paying for them together, in other words, right.
* * * * * *
"Q. Now, did you give those to her?
"A. Did I give those to her?
"Q. Yes.
"A. No, they were ours together.
 "Q. She would be wrong then if she said that you had given them to her and they were hers?
 "A. They are in our house and I consider them ours together.
"Q. I know but had you given them to her?
"A. No.
"Q. You had not?
"A. Everything we buy is ours together.
"Q. So she would be wrong when she said it was . . .
"A. If she said it, I guess it's right.
 "Q. In any event, you don't claim sole ownership of those, the t.v. and the stereo?
"A. No.
 "Q. Belongs to you and your wife according to your testimony?
"A. That's right."
A dual purpose exists for alleging and proving ownership of stolen goods: "(a) to obviate consent by the rightful owner to the asportation; and (b) to identify the particular occasion to prevent double jeopardy." Gaskin v. State, 42 Ala. App. 310,163 So.2d 220 (1964).
It is apparent that the television set was the joint property of both Mr. and Mrs. Kelly. Therefore, any problem as to the ownership of property described in Count II necessarily limits itself to the stereo set. As stated in Lavender v. State,60 Ala. 60 (1877), when a husband and wife are living together and the husband has possession of personal property belonging to his wife, the property may be described as his in an indictment for larceny. See also: Davis v. State, 17 Ala. 415 (1850). Therefore, assuming arguendo, that ownership in the stereo set was defectively laid in Mr. Kelly, the fact that it was within his possession at the time of the theft is sufficient for the property to be described as his in the indictment. For a variance to be material, it must mislead the accused or be substantially injurious to him in making his defense. Tyson v.State, Ala.Cr.App., 361 So.2d 1182 (1978) and cases cited therein. It cannot be said that the appellant was so mistaken as to the rightful ownership as to substantially injure the defense of his case.
Additionally, the evidence could have been considered by the court to indicate that joint ownership of the stereo set existed. Under § 15-8-33, Code of Ala. 1975, when any property belongs to two or more owners, it is sufficient to allege in an indictment the ownership in any one or more of the owners. Consequently, the trial court in ruling on the motion for a new trial could have found the indictment and proof compatible. Consequently, the trial court properly overruled appellant's motion for a new trial.
AFFIRMED.
All the Judges concur.